**NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000644**
**24-FEB-2021**
**07:45 AM**
**Dkt. 70 MO**

NO. CAAP-19-0000644

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
MICHAEL A. CATTANEO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 2PC151000023; CR. NO. 2PC151000122)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Defendant-Appellant Michael A. Cattaneo (**Cattaneo**)

appeals from a July 16, 2019 Order Denying Cattaneo's [Hawaiʻi

Rules of Penal Procedure (**HRPP**)] Rule 35 Motion for Reduction of

Sentence (**Order Denying Motion to Reduce Sentence**) and April 24,

2020 Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**) and

Order Denying Motion to Reduce Sentence (**FOFs/COLs & Order**)

entered by the Circuit Court of the Second Circuit (**Circuit**

**Court**).[1]

---

[1]    The Honorable Richard T. Bissen, Jr. presided.

This appeal arises out of two criminal cases brought by Plaintiff-Appellee State of Hawaiʻi (**State**) against Cattaneo. Cattaneo pleaded no contest to, and was convicted of, one count of Negligent Homicide in the First Degree in violation of Hawaii Revised Statutes (**HRS**) § 707-702.5(1)(b) (2014),[2] one count of Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712-1243(1) (2014),[3] and one count of Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329-43.5(a) (2010).[4]  Cattaneo was sentenced to an indeterminate ten-year

---

[2]  HRS § 707-702.5 provides:

> **§ 707-702.5  Negligent homicide in the first degree**.
> (1) A person commits the offense of negligent homicide in the first degree if that person causes the death of:
>
> > (a)  Another person by the operation of a vehicle in a negligent manner while under the influence of drugs or alcohol; or
> >
> > (b)  A vulnerable user by the operation of a vehicle in a negligent manner.
>
> (2)  Negligent homicide in the first degree is a class B felony.

[3]  HRS § 712-1243 provides:

> **§ 712-1243 Promoting a dangerous drug in the third degree**.  (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
>
> (2)  Promoting a dangerous drug in the third degree is a class C felony.

[4]  HRS § 329-43.5 provides, in relevant part:

> **§ 329-43.5 Prohibited acts related to drug paraphernalia.**  (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.  Any person who
> (continued...)

term of imprisonment for Negligent Homicide in the First Degree and indeterminate five-year terms for each of the drug-related convictions, with the five-year terms running concurrently to each other and consecutively to the ten-year term.

Upon conclusion of a direct appeal from the December 4, 2015 Judgment of Conviction and Sentence (**Judgment**),[5] discussed briefly below,[6] Cattaneo filed an HRPP Rule 35(b) Motion for Reduction of Sentence (**Motion to Reduce Sentence**). After a hearing, the Circuit Court entered the Order Denying Motion to Reduce Sentence.

Cattaneo contends that the Circuit Court erred in denying the Motion to Reduce Sentence by neglecting to consider "the need to avoid unwarranted sentence disparities" among similarly-situated defendants and failing to "state a sufficient basis for re-imposing consecutive sentences upon resentencing." Cattaneo also contends that he received ineffective assistance of counsel during the hearing on the Motion to Reduce Sentence. Cattaneo asks this court to vacate the Circuit Court's April 24,

_____

(...continued)
         violates this section is guilty of a class C felony and upon
         conviction may be imprisoned pursuant to section 706-660
         and, if appropriate as provided in section 706-641, fined
         pursuant to section 706-640.

    [5]    On December 20, 2018, this court issued a Summary Disposition Order affirming the December 4, 2015 Judgment. See State v. Cattaneo, CAAP-16-0000049 and CAAP-16-0000050, 2018 WL 6696055 (Haw. App. Dec. 20, 2018) (SDO). The Judgment on Appeal was entered on January 31, 2019. Cattaneo filed an application for writ of certiorari to the Hawaiʻi Supreme Court, which was denied on May 8, 2019. See State v. Cattaneo, SCWC-16-0000049, 2019 WL 2024438, *1 (Haw. May 8, 2019).

    [6]    See infra note 7.

3

2020 FOFs/COLs & Order and remand this case for a rehearing before a different judge.  After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues and the arguments raised by the parties, we affirm.

I.    BACKGROUND

On January 20, 2015, Cattaneo was indicted by a grand jury on two counts of Negligent Homicide in the First Degree, one count of Operating a Vehicle Under the Influence of an Intoxicant, and one count of Driving Without Motor Vehicle Insurance.  On February 23, 2015, the State filed a Felony Information and Non-Felony Complaint charging Cattaneo with two counts related to dangerous drug possession and paraphernalia, one count of Driving Under the Influence, one count of Driving Without a License, and two counts related to driving without insurance.  On August 6, 2015, Cattaneo, represented by the Office of the Public Defender, pleaded no contest to and was convicted of one count of Negligent Homicide in the First Degree in violation of HRS § 707-702.5(1)(b), one count of Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712-1243(1), and one count of Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329-43.5(a).

In the plea agreement, the parties agreed, *inter alia*, to seek concurrent sentencing on all counts.  The Circuit Court nevertheless sentenced Cattaneo to consecutive terms of imprisonment.  In CR. No. 15-1-0023(4), Cattaneo was sentenced to

an indeterminate ten-year term of imprisonment for his conviction of Negligent Homicide in the First Degree.  In CR. No. 15-1-0022(2), Cattaneo was sentenced to an indeterminate five-year term for each of his convictions for Promoting a Dangerous Drug in the Third Degree and Prohibited Acts Related to Drug Paraphernalia, to run concurrently with each other and consecutively with the ten-year term.

At the sentencing hearing, the Circuit Court solicited statements from, *inter alia*:  Cattaneo, Cattaneo's mother, defense counsel, prosecution counsel, and the friends and family of the deceased.  The Circuit Court concluded that Cattaneo "clearly ha[s] no respect for the law" and "no respect for other people", and that Cattaneo's "rule-breaking attitude has cost a man his life."  The court then explained its sentencing rationale:

> [T]he focus is on how do we change you [(Cattaneo)]? What must the Court do to change you or people who think like you or people who act like you? How do I stop them and you from doing this again?
>
> . . . .
>
> So what I can do is separate you from society long enough for you to gain this insight that you started on and also prevent this from happening to others? [sic]
>
> The time for lessons has passed. This isn't a teaching moment, in my mind. This is a moment for punishment.
>
> . . . .
>
> And so the Court is sentencing the defendant.
>
> Considering the factors under Chapter 706-606, the Court has considered the nature and circumstances of the offense and the history and characteristics of this

defendant, especially the history and characteristics of the defendant.

The Court has considered the need for this sentence to reflect the seriousness of the offense. And this is of the most serious nature, the taking of one's life.

. . . .

The Court is considering promoting respect for the law, providing just punishment for this offense, the Court is absolutely considering affording adequate deterrence to criminal conduct. And deterrence is not just to the defendant, but to those who would think like this or like him.

The Court is considering protecting the public from further crimes of this defendant and providing the defendant with needed educational or vocational training, medical care, other correctional treatment in the most effective manner.

The types of sentences available to the Court have been adequately and appropriately pointed out by both counsel. And the Court does appreciate the argument that both counsels have made.

And the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. I do not know of the sentences imposed in other courtrooms in either September or any other months of similar cases. I know, however, what this Court sentences in these types of offenses.

And so taken [sic] all that into account, in Criminal Number 15-1-0023, Count Two, the defendant is committed to the custody of the Department of Public Safety for a period of 10 years.

In Criminal Number 15-1-0122, Count One, the defendant is sentenced to a period of five years; Count Two, a period of five years.

Those terms will run concurrently with each other and consecutively to the sentence imposed in 15-1-023, totaling 15 years.

Thereafter, the court entered the Judgment.  On January 27, 2016, Cattaneo filed a notice of appeal from the Judgment

(**Direct Appeal**), which was docketed in CAAP-16-0000049.  The

Judgment was affirmed.[7]

On June 19, 2019, Cattaneo filed the Motion to Reduce

Sentence, requesting that the Circuit Court exercise its

discretionary power to reduce Cattaneo's sentence to a concurrent

sentence on all convictions pursuant to the provisions of HRS §§

706-606[8] and 706-668.5.[9]  The motion stated that "[u]nder the

_____

    [7]    In the Direct Appeal, Cattaneo raised three points of error, summarized as follows:

>        (1) the Circuit Court plainly erred when it focused on unreliable hearsay in conjunction with sentencing in the form of Facebook entries described in a letter attached to the Presentence Diagnosis and Report (**PSI Report**); (2) the Circuit Court plainly erred when it imposed consecutive sentences in this case; and (3) this court should recognize plain error in Cattaneo's sentencing because the State failed to comply with the terms of the plea agreement.

State v. Cattaneo, CAAP-16-0000049, 2018 WL 6696055 at *1 (Haw. App. Dec. 20, 2018) (SDO).

    [8]    HRS § 706-606 (2014) provides:

>        **§ 706-606  Factors to be considered in imposing a sentence.**  The court, in determining the particular sentence to be imposed, shall consider:
>
>        (1)    The nature and circumstances of the offense and the history and characteristics of the defendant;
>
>        (2)    The need for the sentence to be imposed:
>
>               (a)    To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>
>               (b)    To afford adequate deterrence to criminal conduct;
>
>               (c)    To protect the public from further crimes of the defendant; and
>
>               (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>                                         (continued...)

7

provisions of HRS §§ 706-606 and 706-668.5, a concurrent sentence would be more appropriate and in line with sentencing defendants convicted of Negligent Homicide in the First Degree."  Moreover, Cattaneo argued that "other case sentencing(s) support the original term of 10 years **concurrent**" because those other "Comparable Cases" contain similar, if not "more egregious", fact patterns resulting in convictions for Negligent Homicide in the First Degree along with other felony convictions, but that those same cases, in the same jurisdiction, resulted in concurrent sentencing.

In addition, Cattaneo represented himself as a model inmate who had sought diligently to improve himself in the almost five years he had been incarcerated, proposing that the court "may see Cattaneo has been serving good time and seeking to be as productive as possible in his almost 5 years of [incarceration] by gaining skills and being employed."[10]  Appended to the Motion

_____

(...continued)

      (3)    The kinds of sentences available; and

      (4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

[9]    HRS § 706-668.5 (2014) provides, in relevant part:  "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706-606."  HRS § 706-668.5(2).

[10]    Cattaneo stated that he goes to school full-time while also holding a full-time job in the kitchen where he prepares meals for special diet need prisoners.  In addition, Cattaneo stated that he has taken courses in vocational plumbing, received several certificates on courses of personal improvement, obtained an OSHA "10" safety card, and is signed up to take

(continued...)

to Reduce Sentence is a hand-written note (**Note**), apparently authored by Cattaneo, in which he expresses contrition, acknowledges the "terrible decision" he made that led to the taking of another's life, acknowledges that "[t]here is no question that [he] needed to take a long hard look at [his] life and the direction it was headed", and that he "has come a long way from where [he] was, and [he is] sure [he has] a ways to go."

On June 25, 2019, the State filed a Statement of No Position to Cattaneo's Motion to Reduce Sentence.

A hearing on the Motion to Reduce Sentence was held on June 27, 2019, at which Cattaneo was represented by Matthew Kohm (**Kohm**).

Kohm argued that Cattaneo has shown remorse and has adjusted, such that the Court might find that Cattaneo "can be productive or that he deserves a chance."  Kohm reiterated points concerning Cattaneo's good conduct and self-improvement in prison.  Kohm made arguments regarding mitigating factors related to Cattaneo's conviction for Negligent Homicide, his lack of prior felony convictions, and the prospects for his reintegration in society.  With respect to "Comparable Cases," Kohm argued:

> Lastly, I would say is I know this Court is very aware of the different sentences that go on in this Court and other Courts. Myself, as a civil attorney, most of my practice, I also get to see these cases from the civil side and what the parole board does.

(...continued)
further vocational courses and to do the "RDAP program."  Cattaneo also stated that he has family ready and job prospects to help him transition back to life on Maui should he be released.

> I will let the Court know, [Cattaneo] was set as a Level 3 offender. I was involved in a First Circuit case, State v. Sioni Tilini, who was an Army vet who was in a collision and he killed the other driver. And he was also set as a Level 3 offender.
>
> So I say that to this Court so that it's not like [Cattaneo] is going to walk if he got a concurrent sentence. But it's the parole board, it's been my experience is that they do treat these severely. And he will still have to do many things before he's eligible for parole.

In response, the Circuit Court, *inter alia*, stated that it had "read all of [Cattaneo's] moving papers" and further acknowledged that "[Cattaneo] has made good use of his time[.] There's no doubt he's made improvements."

Cattaneo made a statement, reiterating the main thrust of his Note, expressing contrition for the damage he caused, taking full responsibility for his actions, and stating that he had no excuse for his bad decision-making.  Additionally, Cattaneo stated that "when [he] was sentenced to prison . . . prison was exactly what [he] needed."  Nevertheless, Cattaneo stated that he had matured to become a "completely different person" with "more to offer society."

The Circuit Court acknowledged Cattaneo's arguments and representations:  "I think you have made good use of your time. And so I appreciate the words you've just spoken, as well as what you wrote, which the Court also spent a lot of time reviewing."

Kohm further argued that Cattaneo has adjusted well to and remained misconduct-free in prison, and that he wants to contribute and be part of society.  Kohm reiterated that Cattaneo had "attempted to have some maturity" and that certain

aggravating character insights which may have been considered by the court in sentencing were made "before [Cattaneo's] wake-up call."  Kohm concluded by asking the court to reduce Cattaneo's sentence and give him concurrent sentencing.

In regards to "the portion of the doctrine that has to do with other cases in this jurisdiction," the Circuit Court stated:

> [I]t's not the Court's practice to review cases that are issued by other Courts, whether in this circuit or others. Because I happen to know that every case is nuanced, every case has something that may not be obvious to someone.
>
> I get it all the time, and I hear it sometimes in letters where someone says, well, how come this guy stole a car and he got a year and the other guy assaulted somebody and he got 30 days and, you know, sometimes even from the same Court.
>
> So I think it's dangerous to -- while we do follow the rule of precedent as far as the law is concerned, I think it would be dangerous to start deciding cases on how someone else decided a case without knowing every single detail about that case.
>
> I don't know about any other Court, but I personally try my best to factor in every single element that I think is important. And some cases can have 50 things that you should consider, and some have five. I don't know what other judges do in deciding their ultimate decision.
>
> So I do factor in the argument of the prosecutor, the argument of the defense, the recommendation from probation. Obviously, the input from the victims and the input from the defendant. They're all significant factors.
>
> I did exactly that in this case with Mr. Cattaneo.

The Circuit Court concluded:

> There has been no change in circumstance in this case, except for the passage of time and the improvement of the defendant[.]
>
> . . . .
>
> I sent him to be punished. I sent him to think greatly about the life he took and the impact it had on those who remain.
>
> So it's with that this Court recalling all of the factors that were taken into account that I deny your

motion. And this is not a simple decision either. I've pondered this as well.

. . . .

This sentence was made to reflect the very, very serious consequence that occurred, as well as all the other factors that have already been discussed that I won't rehash. But it's also a deterrent to every other person out there.

. . . .

[discussing other recent driving related fatalities]

This is not a reflection of Mr. Cattaneo and I'm not comparing him to those. As I said, I don't look at the other cases one way or the other to give somebody a harsher sentence or a lighter sentence because I think it's not fair to a person to do that. I think every single case should stand on its own.

But I do deny your motion with much thought, counsel.

On July 16, 2019, the Circuit Court entered the Order Denying Motion to Reduce Sentence.  On August 14, 2019, after a withdrawal and substitution of counsel was approved, Cattaneo was granted a thirty-day extension of time to file a notice of appeal.  On September 16, 2019, Cattaneo filed a notice of appeal from the Order Denying Motion to Reduce Sentence.

On February 19, 2020, Cattaneo moved for entry of FOFs and COLs Regarding the Order Denying Motion to Reduce Sentence, and on April 24, 2020, the court entered its FOFs/COLs & Order.

In the FOFs/COLs & Order, the court stated, *inter alia*, that "[t]he Court reviewed all available information to reach its original sentence.  The Court considered the arguments of the parties[.]"  The court stated that "[i]n considering the Motion to Reduce Sentence, the Court reconsidered all of the factors that were relevant to [Cattaneo's] sentencing on December 4,

2015," and that "[t]here has been no change of circumstance, except for the passage of time and [Cattaneo's] personal improvements."

The Circuit Court concluded, *inter alia*, that "[a] sentencing court has discretion to impose consecutive terms." The court noted its obligation to consider the factors set forth in HRS § 706-606 and set forth the factors.  The court concluded that Cattaneo's original sentence reflected the court's consideration of the HRS § 706-606 factors, the sentence specifically served the purposes of punishment and deterrence, and there was no reason to change or reduce Cattaneo's sentence.

II.  POINTS OF ERROR

Cattaneo raises three points of error on appeal, contending that:  (1) the Circuit Court plainly erred in refusing to consider facts and arguments regarding the need to avoid unwarranted disparities in sentencing among similarly-situated defendants; (2) the Circuit Court abused its discretion in failing to state a "sufficient basis for re-imposing consecutive sentences upon resentencing;" and (3) Cattaneo received ineffective assistance of counsel at the Motion to Reduce Sentence hearing.

III. APPLICABLE STANDARDS OF REVIEW

In general, "[a] judge has broad discretion in matters related to sentencing." State v. Phillips, 138 Hawaiʻi 321, 357, 382 P.3d 133, 169 (2016) (citation omitted).  Accordingly, "[t]he

13

authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed."  Barnett v. State, 91 Hawaiʻi 20, 26, 979 P.2d 1046, 1052 (1999) (citations and internal quotation marks omitted).

"A trial court has the discretion to, within the time limits set forth by HRPP Rule 35, reduce a sentence.  Therefore, orders on HRPP Rule 35 motions for reduction of sentence are reviewed for an abuse of discretion."  State v. Kong, 140 Hawaiʻi 103, 109, 398 P.3d 692, 698 (2017) (**Kong II**) (citation and internal quotation marks omitted).

> The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. The burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it.

State v. Hinton, 120 Hawaiʻi 265, 273, 204 P.3d 484, 492 (2009) (citation and quotation marks omitted).  "[T]he determination of the existence of clear abuse is a matter which is not free from difficulty[,] and each case in which abuse is claimed must be adjudged according to its own peculiar circumstances."  State v. Gaylord, 78 Hawaiʻi 127, 144, 890 P.2d 1167, 1184 (1995) (citation omitted).  "Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions."  State v. Kahapea, 111 Hawaiʻi 267, 278, 141 P.3d

440, 451 (2006) (brackets, citations, and internal quotation marks omitted).

Concerning ineffective assistance of counsel, the supreme court has explained:

> When reviewing a claim of ineffective assistance of counsel, this court looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawaiʻi 504, 513-14, 78 P.3d 317, 326-27 (2003) (citations and internal quotation marks omitted).

IV.  DISCUSSION

A.  Motion to Reduce Sentence

Cattaneo argues that the Circuit Court erred in denying his Motion to Reduce Sentence because the court in denying the motion failed to consider "[t]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" in violation of HRS § 706-606(4), and failed "to adequately articulate the reasons that it imposed consecutive sentences" in violation of HRS § 706-668.5(2).  Specifically, Cattaneo contends that the court refused to consider facts and arguments regarding two similarly-situated defendants who also were convicted of multiple offenses including Negligent Homicide in the First Degree but who received

concurrent, rather than consecutive, prison sentences.  In addition, Cattaneo claims that the Circuit Court did not explain why the disparity between Cattaneo's sentence and these other sentences was warranted.  We examine each contention in turn.

It is well-established that sentencing determinations are committed to the sound discretion of the trial court and entitled to substantial deference on appeal.  Kahapea, 111 Hawaiʻi at 281, 141 P.3d at 454; State v. Kong, 131 Hawaiʻi 94, 101, 315 P.3d 720, 727 (2013) (**Kong I**) ("A sentencing judge generally has broad discretion in imposing a sentence.") (citation omitted); State v. Murray, 63 Haw. 12, 25, 621 P.2d 334, 342 (1980) (a sentencing court is "afforded wide latitude in the selection of penalties from those prescribed and in the determination of their severity").

Likewise, this court and the Hawaiʻi Supreme Court have repeatedly affirmed the proposition that HRPP Rule 35 vests the circuit courts with discretion to reduce a defendant's sentence following a direct appeal.  See, e.g., State v. Hussein, 122 Hawaiʻi 495, 512, 229 P.3d 313, 330 (2010) (citing, *inter alia*, State v. LeVasseur, 1 Haw. App. 19, 29, 613 P.2d 1328, 1335 (1980) ("[W]e point out that under [HRPP Rule 35] it is open to the court below to reduce the sentence within ninety (90) days of the receipt of our mandate **if it sees fit**.") (emphasis added)).  HRPP Rule 35(b) states that the circuit court "**may** reduce a sentence within 90 days after the sentence is imposed, or within

90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal[.]" (Emphasis added).  This court has also concluded that a circuit court must consider the factors set forth in HRS § 706-606 in ruling on an HRPP Rule 35(b) motion to reduce sentence.  See, e.g., State v. Sauceda, No. 30622, 2011 WL 1909112, *1 (Haw. App. May 18, 2011) (SDO) (citing Kahapea, 111 Hawaiʻi at 278, 280-82, 141 P.3d at 451, 453-55); see also State v. Kong, CAAP-15-0000066, 2016 WL 6997646, *2-4 (Haw. App. Nov. 29, 2016) (mem. op.), vacated on other grounds, Kong II, 140 Hawaiʻi 103, 398 P.3d 692 (reviewing circuit court's denial of HRPP Rule 35(b) motion for independent consideration of merits under HRS § 706-606).

Reconciling a trial court's obligation to consider the HRS § 706-606 sentencing factors with its general discretion in sentencing matters, appellate courts in this jurisdiction have oftentimes stated that "[t]he weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." State v. Barrios, 139 Hawaiʻi 321, 328, 389 P.3d 916, 923 (2016) (quoting Kong I, 131 Hawaiʻi at 101, 315 P.3d at 727 (quoting State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994))).  Thus, "'[a]bsent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing

17

concurrent or consecutive terms of imprisonment under HRS § 706-606.'"  Id. at 333, 389 P.3d 928 (quoting Kong I, 131 Hawaiʻi at 102, 315 P.3d at 728 (quoting Hussein, 122 Hawaiʻi at 503, 229 P.3d at 321)).

In State v. Kahapea, the supreme court considered, *inter alia*, whether the trial court abused its discretion in denying a defendant's HRPP Rule 35 motion where the defendant's sentence to consecutive terms of imprisonment for theft of public funds was significantly greater than the sentences of the defendant's co-conspirators and sentences imposed on defendants in other cases involving the theft of public funds.  111 Hawaiʻi 267, 141 P.3d 440.  In relevant part, Kahapea argued that his sentence of, *inter alia*, five ten-year terms of imprisonment to run consecutively violated HRS § 706-606(4) on the grounds that other allegedly similarly-situated defendants received concurrent sentencing.  Id. at 280-82, 141 P.3d at 453-55.[11]

On appeal, the supreme court examined whether the circuit court correctly concluded that Kahapea's sentence was "ultimately mandated," and examined the circuit court's denial of Kahapea's HRPP Rule 35 motion in light of the "statutory penological goals of retribution, incapacitation, and deterrence[.]"  Id. at 281-82, 141 P.3d at 454-55.  While the

_____

[11]    As set forth above, HRS § 706-606(4) requires a court to consider:  "The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

18

circuit court had distinguished the sentences of other allegedly similarly-situated defendants put forward in Kahapea's HRPP Rule 35 motion, the supreme court's analysis focused on the gravity of Kahapea's crimes and whether "the punishment fit the crimes, as well as the needs of the individual defendant and the community." Id. at 281, 141 P.3d at 454 (brackets, citations and internal quotation marks omitted).  The supreme court noted that "even a disparity among defendants' sentences does not establish that any particular defendant's sentence is excessive", and concluded that "the circuit court reasonably placed greater significance" on the damage caused by Kahapea's actions.  Id. (brackets, citation and internal quotation marks omitted).  In so doing, the supreme court appeared to give credence to the prosecution's argument, which the court quoted in its opinion, that "Kahapea's reference to the sentences of other defendants merely illustrates a different sentencing court's discretion and does not demonstrate that the court that sentenced him abused its discretion in imposing consecutive terms of imprisonment."  Id.  The supreme court concluded that "[w]hile stern, the circuit court's sentence furthers the statutory penological goals . . . and does not reflect arbitrary or capricious action or a rigid refusal to consider the defendant's contentions", and therefore that the denial of Kahapea's HRPP Rule 35 motion was not a plain and manifest abuse of discretion.  Id. at 282, 141 P.3d at 455 (citation and internal quotation marks omitted).

The supreme court's interpretation of HRS § 706-606 accords with the statute's legislative history.  As part of a "comprehensive review of the entire penal code" conducted in response to growing public concern with crime in the early 1980s, the Hawaiʻi Legislature endorsed a fundamental philosophical departure from the then-existing "approach of sentencing which emphasize[d] rehabilitation toward achieving the goal of just punishment."  Conf. Comm. Rep. No. 51-86, in 1986 Senate Journal, at 747,748, 1986 House Journal, at 937, 938.  Although the legislative overhaul called for restraint in "judicial discretion in the initial decision to imprison", it "allow[ed] for discretion in the term of imprisonment."  Stand. Comm. Rep. No. 487, in 1985 House Journal, at 1216.  With specific reference to HRS § 706-606, the supreme court subsequently characterized the reforms as reflecting an "overriding aspiration 'to afford deterrence and to provide just punishment.'"  Gaylord, 78 Hawaiʻi at 149-50, 890 P.2d at 1189-90 (citing Conf. Comm. Rep. No. 51-86, in 1986 Senate Journal, at 748, 1986 House Journal, at 938).  Considered alongside the plain text of the statute, this understanding supports the conclusion that courts applying HRS § 706-606 are fundamentally charged with ensuring that the "punishment fit the crimes" under the "penological goals" established by the Legislature.  Kahapea, 111 Hawaiʻi at 281-282, 141 P.3d at 454-55.

Here, Cattaneo's sentence was imposed in part to reflect the grave consequences of his actions.  At the original sentencing hearing on December 4, 2015, the Circuit Court articulated in great detail its reasons for ordering the sentence it did and set forth its purpose of imposing "just punishment." The court considered each of the HRS § 706-606 factors in turn and noted, among other things, that Cattaneo's offense was "of the most serious nature, the taking of one's life."  Echoing the "penological goals of retribution, incapacitation, and deterrence" articulated in <u>Kahapea</u>, 111 Hawaiʻi at 282, 141 P.3d at 455, the Circuit Court explained that Cattaneo's sentence was aimed at "promoting respect for the law", "affording adequate deterrence . . . not just to the defendant, but to those who would think like this or like him", and "protecting the public from further crimes of this defendant[.]"  Regarding HRS § 706-606(4), the court expressly considered "the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct" and stated that, although it "[did] not know of the sentences imposed in other courtrooms", it knew "what this Court sentences in these types of offenses." The Circuit Court thus concluded, *inter alia*:

> [T]he focus is on how do we change you [(Cattaneo)]?  What must the Court do to change you or people who think like you or people who act like you?  How do I stop them and you from doing this again?
>
> . . . .

> So what I can do is separate you from society long enough for you to gain this insight that you started on and also prevent this from happening to others? [sic]
>
> The time for lessons has passed.  This isn't a teaching moment, in my mind. This is a moment for punishment.

At the June 27, 2019 hearing on the Motion to Reduce Sentence, the Circuit Court "recall[ed] all of the factors that were taken into account" in Cattaneo's original sentencing.  The court stated that it considered all of Cattaneo's moving papers, that the input of the defense was a significant factor in its deliberation, that it was "not a simple decision" to deny the Motion to Reduce Sentence, and that the court pondered the decision, and denied the motion after "much thought."  The Circuit Court also grappled with the needs of the community and discussed the worsening number of fatalities occurring on the roads.  See Kahapea, 111 Hawaiʻi at 281, 141 P.3d at 454 (noting the sentencing court's discretion to make the punishment fit the needs of the community).  In conclusion, the Circuit Court maintained its central purpose of securing just punishment, stating, *inter alia*:

> There has been no change in circumstance in this case, except for the passage of time and the improvement of the defendant[.]
>
> . . . .
>
> I sent him to be punished. I sent him to think greatly about the life he took and the impact it had on those who remain.
>
> . . . .
>
> This sentence was made to reflect the very, very serious consequence that occurred. . . .  But it's also a deterrent to every other person out there.

Cattaneo argues that the Circuit Court neglected to consider HRS § 706-606(4), the need to avoid unwarranted sentence disparities among similarly-situated defendants, pointing to a series of statements made by the court at the June 27, 2019 hearing on the Motion to Reduce Sentence.  The Circuit Court stated that "it's not the Court's practice to review cases that are issued by other Courts, whether in this circuit or others." The court went on to say that it "think[s] it would be dangerous to start deciding cases on how someone else decided a case without knowing every single detail about that case", and that the court "[does not] look at the other cases one way or the other to give somebody a harsher sentence or lighter sentence because . . . it's not fair to a person to do that.  [The court] thinks every single case should stand on its own."  Cattaneo contends that these statements rebut the presumption that the sentencing court considered HRS § 706-606(4).  Reviewing the record as a whole, we find these contentions to be unpersuasive.

The Circuit Court's statements were made in direct reference to Cattaneo's "argument and moving papers," following the court's express recognition of "the portion of the doctrine that has to deal with other cases" -- which Cattaneo acknowledges is a reference to HRS § 706-606(4) -- and in fact demonstrate that the court "considered" HRS § 706-606(4).  The Circuit Court made further reference to the disparate sentencing argument and stated:

> I happen to know that every case is nuanced, every case has something that may not be obvious to someone.
>
> I get it all the time, and I hear it sometimes in letters where someone says, well, how come this guy stole a car and he got a year and the other guy assaulted somebody and he got 30 days and, you know, sometimes even from the same Court.

The court explained its ultimate determination on the Motion to Reduce Sentence, including:

> I don't know about any other Court, but I personally try my best to factor in every single element that I think is important. And some cases can have 50 things that you should consider, and some have five. I don't know what other judges do in deciding their ultimate decision.
>
> This Court takes very seriously its sentencing. And I try to give it a lot of thought because I know how much it's impacting that person, whether it's one day or I sentence them to the rest of their life in prison. I think that's a heavy, heavy decision to make, and not one to be taken lightly.
>
> So I do factor in the argument of the prosecutor, the argument of the defense, the recommendation from probation. Obviously, the input from the victims and the input from the defendant. They're all significant factors.
>
> I did exactly that in this case with Mr. Cattaneo.

The record on appeal demonstrates that the Circuit Court considered the need to avoid unwarranted sentencing disparities pursuant to HRS § 706-606(4) and rejected the argument that Cattaneo's sentence presented an unwarranted sentence disparity.  The court, in confronting whether to exercise its discretion to reduce Cattaneo's sentence, took considerable pains to explain why Cattaneo's sentence was "ultimately mandated" in light of the "statutory penological goals" and purpose of "just punishment" *despite* Cattaneo's argument that his consecutive sentences presented an unwarranted

disparity.  See Kahapea, 111 Hawaiʻi at 281-82, 141 P.3d at 454-55.

In the written FOFs/COLs & Order, as well, the Circuit Court expressly recognized its obligation to consider the factors set forth in HRS § 706-606.  The Circuit Court concluded that Cattaneo's original sentence reflected the court's consideration of the HRS § 706-606 factors, that the sentence also specifically served the purposes of punishment and deterrence, and that because there were no significant changes of circumstance, the court concluded that there was no reason to change or reduce Cattaneo's sentence.

Reviewing the July 19, 2019 Order Denying Motion to Reduce Sentence and the April 24, 2020 FOFs/COLs & Order, as well as the entire record of these proceedings, we reject Cattaneo's argument that the Circuit Court did not sufficiently consider HRS § 706-606(4) in denying the Motion to Reduce Sentence.[12]

For these reasons, we conclude that the Circuit Court did not fail to sufficiently consider facts and arguments concerning the need to avoid unwarranted sentencing disparities as required by HRS § 706-606(4).

---

[12]     Although the court did not expressly distinguish the two "Comparable Cases" cited by Cattaneo in the Motion to Reduce Sentence, the record shows that the court carefully considered the arguments at both the original sentencing hearing and the hearing on the Motion to Reduce Sentence regarding the need to avoid unwarranted sentencing disparities and deliberated the "nuanced" circumstances of this case.  See Gaylord, 78 Hawaiʻi at 144, 890 P.2d at 1184 ("each case in which abuse is claimed must be adjudged according to its own peculiar circumstances"); Kahapea, 111 Hawaiʻi at 281, 141 P.3d at 454 ("[A] disparity among defendants' sentences does not establish that any particular defendant's sentence is excessive") (citation and internal quotation marks omitted).

B.    The Consecutive Sentences

Cattaneo argues that the Circuit Court failed to state a sufficient basis for "re-imposing" consecutive sentences upon "resentencing."  In doing so, Cattaneo improperly conflates what happened in this case – the court rejected Cattaneo's request to reduce his sentence – with something that did not happen here – a resentencing of Cattaneo.  The Circuit Court was not required to "resentence" Cattaneo upon the denial of the HRPP Rule 35 motion and expressly declined to do so.

We nevertheless note that HRS § 706-668.5 vests the trial court with discretion to prescribe consecutive sentences where "multiple terms of imprisonment are imposed on a defendant."  See HRS § 706-668.5(1).  HRS § 706-668.5(2) provides that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706-606."  Interpreting HRS §§ 706-606 and 706-668.5(2), the supreme court has held that "circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence." Kong I, 131 Hawaiʻi at 102, 315 P.3d at 728 (citation and internal quotation marks omitted; emphasis in original).

As discussed above, at the original sentencing hearing, the Circuit Court went point-by-point through the HRS § 706-606 factors.  At the hearing on Cattaneo's Motion to Reduce Sentence, the court recalled "all of the factors that were taken into

account" in its original sentence, considered Cattaneo's moving papers and the arguments set forth therein, and found "no change in circumstance in this case, except for the passage of time and the improvement of the defendant[.]"  Upon conclusion of the arguments and hearing a statement from Cattaneo, the Circuit Court reiterated the essence of its rationale for maintaining Cattaneo's sentence as it did.  The court's reasons are further stated in the FOFs/COLs & Order.

We conclude that Cattaneo's second point of error is without merit.

C.   Ineffective Assistance of Counsel

Cattaneo argues that he received ineffective assistance of counsel at the hearing on his Motion to Reduce Sentence, contending that his then-counsel was ineffective because he failed to:  (1) "properly support the argument regarding the Comparable Cases because he did not have the court records as evidence;" (2) realize that the Circuit Court was "mistake[n] in flatly refusing to consider [] HRS §706-606(4)" and "failing to object" when such a mistake "should have been readily apparent;" and (3) "argue that the Court did not provide a sufficient basis for imposing consecutive sentences."  These arguments are without merit.

When reviewing a claim of ineffective assistance of counsel, we look to whether defense counsel's assistance was within the "range of competence expected of criminal lawyers."

27

Hussein, 122 Hawaiʻi at 511, 229 P.3d at 329.  To prevail on his claim of ineffective assistance of counsel, Cattaneo has the burden of establishing (1) "specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment, or diligence" and (2) "that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense."  Id. at 510, 229 P.3d at 328.

In Hussein, the supreme court considered an ineffective assistance claim arising out of defense counsel's allegedly "meager pre-sentence preparation and argument."  122 Hawaiʻi at 510-11, 229 P.3d at 328-329.  In particular, the defendant claimed "that her counsel was ineffective for failing to cite certain mitigating factors in a written sentencing memorandum" to the sentencing court.  Id. at 510, 229 P.3d at 328.  The supreme court concluded that the defendant was not denied effective assistance "inasmuch as all of the factors alleged by [the defendant] were presented to the [sentencing] court for consideration."  Id. at 511, 229 P.3d at 329.  Notably, although this court had noted that "counsel did not file a written sentencing memorandum and [defendant] now submits that counsel could have better argued the mitigating circumstances," the supreme court looked at the fact that the judge stated at the defendant's sentencing hearing that "*[t]he court has reviewed the [presentence report]*",  which this court had determined "referenced the . . . issues raised by [the defendant] on this

appeal." Id. (italics in original).  The supreme court thus agreed with this court's conclusion that the defendant was not provided ineffective assistance of counsel, as the sentencing court "was made aware of the mitigating factors cited by [defendant], either through the [presentence report] or in open court." Id.

Cattaneo similarly contends that his prior counsel, Matthew Kohm, was ineffective because Kohm "failed to effectively create a record of the facts in the [Comparable Cases] because [Kohm] did not present the [Comparable Cases'] court records as evidence."  However, the Motion to Reduce Sentence, submitted to the court by Kohm on behalf of Cattaneo, contains a multiple-paragraphs-long section entitled "Other Cases", describing the facts of the convictions and sentencing in these Comparable Cases[13] in support for the argument that "a concurrent sentence would be more appropriate and in line with sentencing defendants convicted of Negligent Homicide in the First Degree."  As Cattaneo himself states in his Opening Brief, "[t]he Motion to Reduce Sentence provided detailed information regarding the facts and circumstances of the Comparable Cases."

---

[13]    The two circuit court cases pointed to by Cattaneo are docketed in JIMS as State v. Shine, 2PC141000708, and State v. Duran, 2PC151000134.  In his Opening Brief, Cattaneo requests this court take judicial notice of the eCourt Kōkua records of those cases pursuant to Hawaiʻi Rules of Evidence (HRE) Rule 201(b).  Although "[j]udicial notice may be taken at any stage of the proceeding", HRE 201(f), Cattaneo does not point to any specific adjudicative fact or facts of which we are to notice.  We therefore decline to take judicial notice of those proceedings beyond what was presented to the Circuit Court.

In addition to presenting the Comparable Cases argument in the written motion, Kohm raised the issue, albeit briefly, at the hearing on the Motion to Reduce Sentence, stating "I know this Court is very aware of the different sentences that go on in this Court and other Courts." Shortly thereafter, the court stated that it had "read all of [Cattaneo's] moving papers", later thanking Kohm for his "excellent argument and moving papers" and proceeded to discuss "the portion of the doctrine that has to do with other cases in this jurisdiction[.]" The court did not reject Cattaneo's Comparable Cases argument for lack of detail or evidence. Indeed, the court stated it considered "the argument of the defense" as a "significant factor" in its decision-making, and the court's Order Denying the Motion to Reduce Sentence reflects that it "considered the moving papers, submissions of parties and the argument submitted at the motion."

Thus, we reject Cattaneo's claim of ineffective assistance of counsel for alleged failure to supplement the argument by introducing the court records of Comparable Cases.

Cattaneo also contends that his counsel was ineffective for failing to object to the Circuit Court's refusal to consider HRS § 706-606(4). Cattaneo's counsel presented ample argument based on HRS §706-606(4) and adequately preserved the issue for appellate review. We, therefore, fail to see any lack of competence emanating from a failure to object to the court's

explanation of the basis for his ruling.  Moreover, as discussed above, the Circuit Court fulfilled its obligation to consider the HRS § 706-606 factors, including HRS § 706-606(4).  We conclude that counsel's lack of objection did not constitute the "withdrawal or substantial impairment of a potentially meritorious defense."  Hussein, 122 Hawaiʻi at 510, 229 P.3d at 328.

Finally and relatedly, Cattaneo contends that his counsel was ineffective for failing to object to the Circuit Court's "lack of rationale for its disproportionately long, consecutive sentences."  Again, as discussed herein, the Circuit Court's stated purposes of retribution, incapacitation, and deterrence -- based on the court's particular consideration of the "history and characteristics of the defendant," and of "the need for this sentence to reflect the seriousness of the offense," as articulated at length in the original sentencing and discussed at the hearing on the Motion to Reduce Sentence, as well as in the FOFs/COLs & Order -- satisfied the requirement that the court state on the record its reasons for imposing consecutive sentencing under HRS §§ 706-606 and 706-668.5.  See Kong I, 131 Hawaiʻi at 103, 315 P.3d at 729.  It therefore follows that Cattaneo's counsel's failure to object based on the court's "lack of rationale" cannot sustain a claim for ineffective assistance of counsel.

31

We therefore reject Cattaneo's contention that he was denied ineffective assistance of counsel on his Motion to Reduce Sentence.

V.   <u>CONCLUSION</u>

For these reasons, the Circuit Court's July 16, 2019 Order Denying Motion to Reduce Sentence is affirmed.

DATED: Honolulu, Hawaiʻi, February 24, 2021.

On the briefs:

Pamela I. Lundquist,
for Defendant-Appellant.

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge